## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BEVERLY MOORES | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of the Social | : | |
| Security Administration, | : | |
| Defendant | : | NO.  22-5125 |

### MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                    May 23, 2023

Beverly Moores ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.  Plaintiff has filed a brief in support of her request for review and the Commissioner has responded to it.  For the reasons set forth below, Plaintiff's request for review is granted and the case is remanded to the Commissioner.

### I.        PROCEDURAL HISTORY[1]

On July 29, 2019, Plaintiff applied for DIB, alleging that her disability commenced on June 8, 2019.  R. 15.  The claim was denied, initially and upon reconsideration; therefore, Plaintiff requested a hearing.  _Id._  On September 29, 2021, due to COVID-19 precautions, Plaintiff appeared for a video hearing, before Kathleen McDade, Administrative Law Judge ("the ALJ"); Plaintiff, represented by her current attorney, and Louis Szollosy, a vocational expert, ("the VE") testified at the hearing.  _Id._   On November 21, 2021, the ALJ, using the sequential evaluation process

---

[1] The court has reviewed and considered the following documents in analyzing this case:  Plaintiff's Brief and Statement of Matters Complained of On Appeal ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), and the administrative record.  ("R.").

("SEP") for disability,[2] issued an unfavorable decision.   R. 15-24.   The Social Security Administration's Appeals Council denied Plaintiff's request for review, on October 19, 2022, making the ALJ's findings the final determination of the Commissioner.   R. 1-3.   Plaintiff presently seeks judicial review and the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II.   FACTUAL BACKGROUND

A.   Personal History

Plaintiff, born on November 19, 1975, R. 23, was 45 years old on the date of the ALJ's decision.  She last worked in January 2016, R. 61-62, and lives with her mother, step-father, and seven-year-old son.  R. 61.

B.   Plaintiff's Testimony

At the September 29, 2021 administrative hearing, Plaintiff testified about her impairments.  R. 60-79.  She suffers from autoimmune disease, Epstein-Barr virus, lymphedema,

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1.  If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed.  Otherwise proceed to Step 2.  *See* 20 C.F.R. § 404.1520(b).
>
> 2.  If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed.  Otherwise proceed to Step 3.  *See* 20 C.F.R. § 404.1520(c).
>
> 3.  If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  Otherwise proceed to Step 4.  *See* 20 C.F.R. § 404.1520(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed.  Otherwise proceed to Step 5.  *See* 20 C.F.R. § 404.1520(f).
>
> 5.  The Commissioner will determine whether, given the claimant's residual functional capacity, age, education, and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled.  *See* 20 C.F.R. § 404.1520(g).

and fibromyalgia. R. 62, 66. Lymphedema, which she developed after undergoing surgery in 2016, causes pain, swelling, and inability to use her arms; her symptoms are usually worse in her right arm. R. 62-63, 72. The only relief for a lymphedema flare-up is to lie down for several hours, until the pain subsides. R. 63, 67. Approximately 18 months before the hearing, Plaintiff underwent a liposuction procedure in the hopes of alleviating her lymphedema symptoms. R. 64. The surgery lessened, but did not eliminate those symptoms, although the procedure did restore her ability to drive. *Id.* Another surgical procedure could further alleviate her lymphedema symptoms; however, Plaintiff's doctor advised that she does not qualify for it. R. 65. Plaintiff wears sleeves on her arms and receives massage treatments to help ameliorate the lymphedema symptoms. R. 65-66.

Plaintiff experiences lymphedema flare-ups, which totally prevent her from using her arms, approximately twice per month. R. 66. Other times, she feels weak, but is able to function. *Id.* Plaintiff has noticed that a lymphedema flare-up often triggers her fibromyalgia, causing pain in her knees, legs, shoulders, and chest, requiring her to lie down for several hours at a time. R. 77.

Plaintiff's fibromyalgia and Epstein-Barr cause persistent fatigue and weakness; as a result, she only leaves home two or three times a week; in between, she rests. *Id.* The Adderall Plaintiff takes for endometriosis helps alleviate the fatigue caused by Epstein-Barr. R. 67. Plaintiff also has a genetic disorder which requires vitamin B-12 injections, which adversely affect her Epstein-Barr virus. R. 68.

Additionally, Plaintiff suffers from endometriosis. R. 74. Earlier in her life, she underwent surgery for this condition every other year. *Id.* After her ninth surgery, Adderall was prescribed and has lessened her symptoms and eliminated the need for further surgeries. *Id.*

On a typical day, Plaintiff drives her son three blocks to school; she is unable to tolerate

3

the walk.  R. 69.  Once back at home, she rests for one to two hours.  *Id.*  At the end of the school

day, she drives to pick up her son; if he has an after-school activity, Plaintiff does not schedule

anything else so that she has enough energy to attend.  *Id.*  She prepares simple meals for herself

and her son; however, her stepfather cooks for them two or three times per week.  R. 70.  In fact,

she moved in with her mother and stepfather because the accumulation of symptoms after her 2016

surgery caused her inability to care for her son by herself.  *Id.*

Plaintiff cannot vacuum and avoids lifting heavy items; sometimes a gallon of milk is too

much for her to manage.  R. 71.  Recently, she used an electric screwdriver while a friend helped

her to assemble a bed; the resulting pain from this minor exertion resulted in inability to use her

right arm for the rest of the week.  *Id.*  Plaintiff frequently sends out her laundry to a service, rather

than trying to wash it herself, because she lacks the energy to do it alone.  R. 78.  Further, she

orders groceries to be delivered to her home, rather than shop at the market herself.  R. 77-78.

Finally, Plaintiff sleeps for only five to six hours, in two-hour increments.  R. 75.

C.    Vocational Testimony

The VE classified Plaintiff's past work as a territory sales manager as a skilled[3] position,

normally performed at the sedentary[4] level, which Plaintiff performed at the medium[5] level of

exertion.  R. 80.  The ALJ then asked the VE to consider a person of Plaintiff's age, education,

---

[3] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced.  . . . Other skilled jobs may require dealing with people, fact, or figures or abstract ideas at a high level of complexity."  20 C.F.R. § 404.1568(c).

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary to carry out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

and work experience, who could perform light[6] work, and had the following limitations: frequently able to balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; never able to climb ladders, ropes and scaffolds; able to tolerate occasional exposure to extreme cold, heat and vibration; never able to encounter unprotected heights or moving mechanical parts; occasionally able to operate an automatic transmission car; occasionally able to reach overhead bilaterally and frequently reach in all other directions; frequently able to finger, feel and handle bilaterally; occasionally able to push and pull using the lower extremities; and able to tolerate no more than moderate noise.  R. 80-81.  The VE responded that this individual could perform Plaintiff's past job as it is usually performed.  R. 81.  Next, the VE opined that, if the hypothetical person's exertional level was reduced to sedentary, she could still perform Plaintiff's past job.  *Id.*  However, if an individual consistently missed one day of work per month, sustaining employment would be problematic.  R. 81-82.

The VE was asked to consider if light or sedentary jobs existed for an individual who could only occasionally use their upper extremities for reaching.  R. 82.  The VE responded that the following sedentary, skilled jobs would be available:  (1) contract administrator or purchasing manager, numbering 35,000 in the national economy; (2) department manager, numbering 100,000 in the national economy; and (3) agent or assistant, numbering 50,000 in the national economy. R. 83-84.  The VE further opined that an individual who was consistently off-task 15% of the time could not sustain competitive employment.  R. 85.  Finally, the VE confirmed that his testimony was either consistent with the Dictionary of Occupational Titles ("DOT") or, where a matter was not addressed in the DOT, based upon his experience.  R. 86.

---

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

### III.   THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1.  [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2021.

2.  [Plaintiff] not engaged in substantial gainful activity since June 8, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.  [Plaintiff] has the following severe impairments: degenerative disc disease, fibromyalgia, peripheral neuropathy, lymphedema, hypothyroidism, chronic fatigue syndrome, and migraine headaches (20 CFR 404.1520(c)).

4.  [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that [Plaintiff] had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except frequent balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional exposure to extreme heat or cold and vibration; no exposure to hazards such as unprotected heights and unprotected moving mechanical parts; occasional operation of an automatic transmission motor vehicle; occasional reaching overhead bilaterally; frequent reaching in other directions, handling, fingering, and feeling bilaterally; occasional pushing/pulling with the lower extremities; and the work environment should provide exposure to no more than moderate noise levels.

6.  [Plaintiff] is able to perform past relevant work as a Territory Sales Manager.  This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity (20 CFR 404.1565).

7.  [Plaintiff] has not been under a disability, as defined in the Social Security Act, from June 8, 2019, through the date of this decision (20 CFR 404.1520(f)).

R. 17-19, 23-24.

## IV.   DISCUSSION

A.    Standard of Review

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted).  While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance.  *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).  Indeed, the court is not permitted to weigh the record evidence itself.  *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  By contrast, the Commissioner's legal conclusions are subject to *de novo* review.  *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.    Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R.

§ 404.1505(a).  Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments.  *Heckler*, 461 U.S. at 460.  Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past employment.  *See Brown*, 845 F.2d at 1214.  If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity.  *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.     Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that Plaintiff could perform her past relevant work as well as other sedentary jobs that exist in the national economy and, hence, was not disabled.  R. 15-24.  Plaintiff disputes the ALJ's decision and argues that the ALJ reversibly erred by:  (1) failing to accurately identify the restrictions resulting from her symptoms; (2) failing to evaluate her symptoms in accordance with the relevant regulations; (3) failing to assess properly her residual functional capacity ("RFC"); (4) improperly assessing her truthfulness, in violation of Social Security ruling ("SSR") 16-3p; (5) improperly dismissing her complaints; and (6) failing to assess the combined effect of her fibromyalgia and lymphedema.  Pl. Br. at 2-27.  The Commissioner denies Plaintiff's assertions.  Resp. at 1-19.  This court finds that

the Plaintiff's fourth and sixth arguments have merit.  As a result of these errors, the ALJ's evaluation of his RFC is flawed, hence, her third argument also has merit.  Accordingly, this case is remanded for the ALJ to correct the errors she committed and to render a new RFC assessment.[7]

1.  The ALJ Erred Reversibly by Evaluating Plaintiff's Truthfulness

Plaintiff maintains that the ALJ violated SSR 16-3p, because, in the course of evaluating her symptoms, the ALJ expressed the view that her statements about her symptoms were not truthful.  Pl. Br. at 18-19 (citing R. 21-22).  Ignoring the ALJ's plain words and the express prohibition contained in SSR 16-3p, the Commissioner incorrectly asserts that the ALJ did not violate SSR 16-3p.  Resp. at 14.

SSR 16-3p states that, when determining whether a claimant's statements about her symptoms are consistent with the record, an ALJ may not "assess an individual's overall character **or truthfulness**."  SSR 16-3p, 2017 WL 5180304, *11 (emphasis added).  The ALJ did precisely what SSR 16-3p prohibits, and expressly opined that Plaintiff was untruthful when she testified about her symptoms.  This constitutes legal error.  *Id.*  Upon remand, the ALJ shall not express any opinion about Plaintiff's truthfulness and, instead, shall focus solely on whether her statements about her symptoms are consistent with the record, as SSR 16-3p instructs her to do.  The ALJ shall not express any opinion about whether Plaintiff is truthful when she makes statements about her symptoms.

2.  The ALJ Erred Reversibly by Failing to Consider Plaintiff's Fibromyalgia and Lymphedema in Combination

Plaintiff argues that the ALJ committed reversible error by failing to assess the combined effect of her fibromyalgia and lymphedema.  Pl. Br. at 26-27.  The Commissioner counters that,

---

[7] Inasmuch as the court has found the ALJ committed several reversible errors, it is unnecessary to consider Plaintiff's other three assertions of error.

because the ALJ stated she would consider all of Plaintiff's symptoms when assessing Plaintiff's RFC, this court must assume that she considered the combined effect of her fibromyalgia and lymphedema. Resp. at 17. The Commissioner's contention is belied by the record.

Plaintiff testified that her fibromyalgia and lymphedema were related, because when she suffers a lymphedema episode, which manifests in upper arm pain, it often triggers her fibromyalgia, which causes pain throughout her body. R. 77. The ALJ failed to acknowledge Plaintiff's testimony in this regard. *See* R.19. Instead, she ignored it and simply stated what had caused Plaintiff's lymphedema and that Plaintiff experienced fibromyalgia. *Id.* The ALJ also failed to consider whether Plaintiff's testimony about lymphedema triggering fibromyalgia was consistent with the record, as she was required to do by SSR 16-3p. *See* 2017 WL 5180304, *9. Upon remand, the ALJ shall expressly consider Plaintiff's testimony about the relationship between her lymphedema and fibromyalgia and evaluate Plaintiff's symptoms in the manner required by SSR 16-3p.

3. The ALJ's RFC Assessment is Flawed

The ALJ's failure to apply SSR 16-3p correctly when evaluating Plaintiff's symptoms and by ignoring Plaintiff's testimony that her lymphedema flare-ups trigger fibromyalgia flare-ups affect the RFC assessment, because, if the ALJ had accepted these symptoms as supported by the record, she would have likely found that Plaintiff had more upper extremity restrictions, less stamina, and too many absences from work to sustain employment. Upon remand, the ALJ shall reassess Plaintiff's RFC, after correctly evaluating her testimony about her symptoms.

An implementing order and order of judgment follow.